**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| JESUS TREVINO, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| *vs.* | § § | Civil Action No. 7:20-cv-00059 |
| SCOTT & ASSOCIATES, P.C., a Texas Professional Corporation; and JOHN AND JANES DOES 1-10, | § § § | |
| Defendants. | § § | |

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT
COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION ACT,
AND DEMAND FOR JURY TRIAL**

---

Plaintiff, JESUS TREVINO, individually and on behalf of all others similarly situated, by

way of this Complaint against Defendants, SCOTT & ASSOCIATES, P.C. ("SCOTT"), and

JOHN AND JANES DOES 1-10 ("DOES"), states:

### I.  NATURE OF THE ACTION

1.      Plaintiff brings this action for the illegal practices of Defendants who used unfair,

unconscionable, false, deceptive, and misleading practices, and other illegal practices, in

connection with its attempts to collect an alleged debt from him. Plaintiff alleges Defendants'

collection practices violate, *inter alia*, the Fair Debt Collection Practices Act (FDCPA), 15

U.S.C. § 1692, *et seq.* and Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392, *et seq.*

2.      The FDCPA regulates the behavior of collection agencies attempting to collect a

debt on behalf of another. The United States Congress found abundant evidence of the use of

abusive, deceptive, and unfair debt collection practices by many debt collectors, and has

determined that abusive debt collection practices contribute to a number of personal

bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

3.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *McMurray v. ProCollect, Inc*., 687 F.3d 665 (5th Cir. 2012).

4.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16).

5.      To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8).

6.      The TDCA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCA and deceptive practices Acts).

7.      Plaintiff seeks actual, statutory, and exemplary damages, injunctive relief, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by

this Court, pursuant to the FDCPA, TDCA, and all other common law or statutory regimes.

## II.  PARTIES

8.      TREVINO is a natural person.

9.      At all times relevant to the factual allegations of this Complaint, TREVINO was a citizen of, and resided in, the City of Edinburg, Hidalgo County, Texas.

10.      At all times relevant to the factual allegations of this Complaint, SCOTT was a professional corporation existing pursuant to the laws of the State of Texas.

11.      On information and belief, SCOTT maintains its principal place of business at 1120 Metrocrest Drive, Suite 100, Carrollton, Texas.

12.      DOES are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of the DOE defendants once they are ascertained.

## III.      JURISDICTION AND VENUE

13.      Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331 & 1337.

14.      Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

15.      Declaratory relief is available pursuant 28 U.S.C. §§ 2201, 2202.

16.      Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred within this federal judicial district, and because SCOTT regularly transacts business within this federal judicial district and, therefore, reside in the State of Texas within the meaning of 28 U.S.C. § 1391(b) and (c).

## IV.    FACTS

17.      SCOTT regularly engages in the collection of defaulted consumer debts.

18.     SCOTT regularly collects or attempts to collect debts alleged to be owed to others.

19.     SCOTT is a business the principal purpose of which is the collection of defaulted consumer debts.

20.     In attempting to collect debts, SCOTT uses the mails, telephone, the internet, and other instruments of interstate commerce.

21.     On information and belief, and based on advice of counsel, DOES are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw the violative policies and procedures used by the employees of SCOTT that are the subject of this Complaint. DOES personally control, and are engaged in, the illegal acts, policies, and practices utilized by SCOTT and, therefore, are personally liable for all the wrongdoing alleged in this Complaint.

22.     SCOTT mailed or caused to be mailed a letter dated March 14, 2019 (the "Letter") to TREVINO.

23.     A true and correct copy of the Letter is attached as *Exhibit A*, except that portions of the Letter have been redacted.

24.     The Letter alleged TREVINO had incurred and defaulted on a financial obligation (the "Debt"), owed to Capital One Bank (USA), N.A. ("Capital One").

25.     On information and belief, sometime prior to March 14, 2019, Capital One either directly or through intermediate transactions assigned, placed, or transferred the Debt to SCOTT for collection.

26.     The alleged Debt arose out of one or more transactions in which the money, property, insurance, or services that were the subject of the transactions were primarily for

personal, family, or household purposes.

***A.***     ***False Implications Regarding the Settlement Offers.***

27.     The Letter stated, in relevant part:

## TAX TIME SETTLEMENT OFFER

Dear Trevino Jesus [sic],

***Are you expecting a tax refund?*** We are offering **SPECIAL TAX TIME AUTHORITY ON YOUR ACCOUNT;** but for a limited time only! We will work with you to find an arrangement that fits your budget.

**Option 1: Pay $430.49**, which is $352.22 less than the total amount due.

**Option 2: Pay $166.33** per month for the next 4 months, which is $117.41 less than the total amount due.

**Option 3: Pay $21.74** per month for the next thirty-six (36) months, which is balance in full.

. . . .

PLEASE DO NOT IGNORE THIS MATTER! This offer is good for 45 days.

28.     The Letter's "Tax Time Settlement Offer" is in the idiom of limited-time or one-time sales offers, clearance sales, going-out-of-business sales, and other temporary discounts which are false, deceptive, and misleading because they cause the unsophisticated consumer to think that if the payment of the reduced amount is not paid by the deadline, there will be no further chance to settle the Debt for less than the full amount.

29.     In fact, SCOTT's statement that "[t]his offer is good for 45 days" is materially false, deceptive, and misleading because it is *always* obligated by Capital One to renew the settlement options stated in the Letter.

30.     On information and belief, Capital One and SCOTT would have accepted less than settlement offers at any time to settle the Debt.

31.     The Letter falsely suggests to the unsophisticated consumer that the Settlement Offers were one-time, take-it-or-leave-it offers.

32.     The false implication arises from the totality of the Letter, including but not limited to (A) stating that the offer was a "***SPECIAL TAX TIME***" offer, which reinforced the statement that the offer was "for a limited time only"; (B) placing a 45 day expiration date on the offer; and (C) stating, in all capital letters: "PLEASE DO NOT IGNORE THIS MATTER!"

33.     SCOTT' false statement that "[t]his offer is good for 45 days" is materially false, deceptive, and misleading because it influences the unsophisticated consumer's decision to promptly pay the Debt under the false belief that the offer would not be renewed.

34.     Consumers must often make difficult decisions about how to use scarce financial resources. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 368 (7th Cir. 2018).

35.     A rational person with limited financial resources would, based on the Letter, choose to pay the Debt over an otherwise identical debt in which the collection letter did not falsely imply that the Settlement Offers were one-time, take-it-or-leave-it offers.

36.     SCOTT' use of a form letter like the Letter—which falsely implies a settlement offer will not be renewed—competitively disadvantages debt collectors who collect debts who do not falsely imply that a settlement offer will not be renewed.

37.     The Letter is materially false, deceptive, and misleading to an unsophisticated consumer. *Goswami v. Am. Collections Enter.*, 377 F.3d 488, 495-496 (5th Cir. 2004).

38.     SCOTT's misleading and deceptive settlement offer deprived TREVINO of truthful, non-misleading, information in connection with its attempt to collect the Debt.

**B.**     ***False Implications Regarding Tax Information***.

39.     The Letter stated the total amount owed was $782.70.

40.     Option 1 offered to settle the debt for $430.49, a discount of $352.22.

41.    In offering a $352.22 discount, Capital One was offering to write off or forgive that amount of the Debt.

42.    Option 2 offered to settle the debt for $665.32, a discount of $117.41.

43.    In offering a $117.41 discount, Capital One was offering to write off or forgive that amount of the Debt.

44.    Option 3 did not offer any discount at all.

45.    Buried at the bottom of the letter, following SCOTT's signature, the Letter contains the following advice: "*Please consult your financial advisor, as forgiveness of debt may require the filing of a 1099C.*"

46.    When Capital One writes off or forgives $600 or more of the principal amount of a debt, it may be required by law to file an IRS Form 1099C.

47.    When the amount of principal forgiven is less than $600, Capital One (like other credit issuing banks) is not required to file, and so does not file, an IRS Form 1099C.

48.    Option 1 contemplated forgiveness of less than $600.

49.    Had TREVINO accepted Option 1, Capital One would not have been required to file, and would not have filed, an IRS Form 1099C.

50.    Option 2 contemplated forgiveness of less than $600.

51.    Had TREVINO accepted Option 2, Capital One would not have been required to file, and would not have filed, an IRS Form 1099C.

52.    Option 3 did not contemplate any forgiveness of debt.

53.    Had TREVINO accepted Option 3, Capital One would not have been required to file, and would not have filed, an IRS Form 1099C.

54.    Trevino's acceptance of any of the three options would not have required Capital One to file an IRS Form 1099C with the IRS.

55.     The Letter was misleading because it suggested Capital One might file an IRS Form 1099C when in fact Capital One would not do so.

56.     By virtue of the defaulted nature of the debts Capital One places with SCOTT for collection, the consumers alleged to owe the debts are likely insolvent.

57.     SCOTT, therefore, knows, or reasonably should know, that the consumers who receive its letters would be unable to afford to consult with a "tax advisor."

58.     SCOTT is under no legal requirement to disclose that Capital One may file a Form 1099C.

59.     SCOTT is under no legal requirement to recommend consulting with a "tax advisor."

60.     SCOTT's references to "1099C," and "tax advisor" are intended to facilitate its collection efforts.

61.     By referring to "1099C," and "tax advisor," SCOTT increases the likelihood the consumer will pay the full amount of the debt to avoid increased involvement with, or scrutiny by, the IRS.

62.     The statement "*[p]lease consult your financial advisor, as forgiveness of debt may require the filing of a 1099C*" is a collection ploy to incentivize unsophisticated consumers to arrange to pay the full amount of a debt out of fear that, by accepting a settlement offer, they will have to incur the expense of employing a certified public accountant or other tax professional to address unknown tax issues triggered by accepting a settlement offer, or risk becoming the target of the Internal Revenue Service.

63.     Upon receiving the Letter, the unsophisticated consumer will make arrangements to pay the debt in full, fearing the effects the filing of an IRS Form 1099C would have, including, but not limited to, possible disqualification from tax benefits such as the earned

income credit, entitlement benefit such as housing and Social Security benefits, incurring tax penalties for additional income for which there was no withholding, or a time-consuming and emotionally distressing audit.

64.     The Letter is materially confusing, misleading, and deceptive to the unsophisticated consumer.

65.     The Letter deprived TREVINO of truthful, non-misleading, information in connection with SCOTT's attempt to collect the Debt.

66.     On information and belief, the Letter was created by merging information specific to a debt and consumer with a template to create what is commonly called a "form letter."

67.     Consequently, on information and belief, SCOTT caused the same form collection letter to be mailed to others who, like TREVINO, reside in Texas.

## V.   CLASS ALLEGATIONS

68.     This action is brought as a class action.  Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

69.     TREVINO seeks to certify a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

70.     *Class Definition.* The Class consists of all natural persons to whom SCOTT mailed a written communication in the form of *Exhibit A* to an address in the State of Texas between March 4, 2019 and March 25, 2020.

71.     The identities of the Class members are readily ascertainable from the business records of Defendant and those entities on whose behalf Defendant attempted to collect debts.

72.     *Class Claims.* The Class claims include all claims each Class member may have for a violation of the FDCPA and TDCA arising from SCOTT having mailed a written communication in the form of *Exhibit A* to such Class member.

73.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

74.     *Numerosity.* On information and belief, the Class is so numerous that joinder of all members would be impractical and includes at least 40 members.

75.     *Common Questions Predominate.* Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual class members because such questions and issues concern the same conduct by Defendants with respect to each Class member.

76.     *Typicality.* TREVINO's claims are typical of Class because those claims arise from a common course of conduct engaged in by Defendants.

77.     *Adequacy.* TREVINO will fairly and adequately protect the interests of the Class members because he has no interests adverse to the interests of the Class members. Moreover, TREVINO is committed to vigorously litigating this matter and retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither TREVINO nor his counsel has any interests that might cause them not to vigorously pursue the instant class action lawsuit.

78.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that the questions of law and fact common to the Class members predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Based on discovery and further investigation (including, but not limited to, disclosure by Defendants of class size and net worth), TREVINO may, in addition to moving for class certification using modified definitions of the Class and/or Class claims, and the Class period,

seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## VI.  COUNT ONE: VIOLATION OF THE FDCPA.

79.   The preceding facts about Defendants and Plaintiff are incorporated by reference.

80.   SCOTT is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

81.   DOES are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

82.   The Debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

83.    TREVINO is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

84.   The Letter was a "communication" within the meaning of 15 U.S.C. § 1692a(2).

85.   SCOTT's use and mailing of ***Exhibit A*** violated the FDCPA in one or more of the following ways:

     (a)    Using a false, deceptive, or misleading representation or means in violation of 15 U.S.C. § 1692e;

     (b)    Using a false representation of the chater, amount, or legal status of a debt in violation of 15 U.S.C. §1692e(2);

     (c)    Making a threat to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. § 1692e(5);

     (d)    Using a false representation or deceptive means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692e(10);

     (e)    Using unfair or unconsionable means in connection with the collection of any debt in violation of 15 U.S.C. § 1692f.

86.   The conduct of Defendants invaded the rights of Plaintiff that are protected by the FDCPA, the invasion of which caused injury-in-fact.

87.   Based on a single violation of the FDCPA, Defendants are liable to Plaintiff for such relief as is allowed under 15 U.S.C. § 1692k.

## VII.    COUNT TWO: VIOLATION OF THE TDCA

88.    The preceding facts about Defendants and Plaintiff are incorporated by reference.

89.    SCOTT is engaged in the act and/or practice of "debt collection" as that term is defined by Tex. Fin. Code § 392.001(5).

90.    SCOTT is a "debt collector" within the meaning of Tex. Fin. Code § 392.001(5).

91.    The Debt is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

92.    TREVINO is a "consumer" within the meaning of Tex. Fin. Code § 392.001(1).

93.    SCOTT violated the TDCA including, but not limited to, the following ways:

    (a)    Using false, deceptive, and misleading representations and/or deceptive

        means to collect or attempt to collect any debt or to obtain information

        concerning a consumer in violation of Tex. Fin. Code § 392.304(a)(19).

## VIII.   PRAYER FOR RELIEF.

73.    WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

*A.*    *With respect to Count One:*

74.    Certifying this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23 including defining the Class, defining the class claims, and appointing Plaintiff's attorneys as class counsel;

75.    Awarding statutory damages for Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

76.    Awarding of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

77.    An incentive award for Plaintiff, in connection with his services to the Class in an amount to be determined by the Court after judgment is entered in favor of the Class;

78.     Adjudging this action to be a successful action under 15 U.S.C.

§ 1692k(a)(2)(B)(3) and awarding reasonable attorneys' fees including litigation expenses;

79.     Awarding costs of suit as allowed by law;

80.     To the extent the recovery of attorney's fees, litigation expenses, and costs

pursuant to 15 U.S.C. § 1692k(a)(3) causes a negative tax consequence to Plaintiff and/or the

Class, a sum sufficient to ameliorate such consequences; and

81.     For such other and further relief as may be just and proper.

**B.      *With respect to Count Two:***

82.     Certifying this action may be maintained as a class action pursuant to

Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing

Plaintiff's attorneys as class counsel;

83.     Awarding injunctive relief to prevent or restrain Defendants' further violations of

Chapter 392 of the Texas Finance Code pursuant to Tex. Fin. Code § 392.403(a)(1);

84.     Awarding such actual damages as may be proven to Plaintiff and members of the

Class pursuant to Tex. Fin. Code § 392.403(a)(2);

85.     An incentive award for Plaintiff, in connection with his services to the Class in an

amount to be determined by the Court after judgment is entered in favor of the Class;

86.     Adjudging Plaintiff to have successfully maintained an action under Tex. Fin.

Code § 392.403(a), and awarding reasonable attorney's fees and costs pursuant to Tex. Fin. Code

§ 392.403(b); and

87.     For such other and further relief as may be just and proper.

## IX. JURY DEMAND.

89.     Demand is hereby made for trial by jury.

Respectfully submitted,

_s/ Andrew T. Thomasson_

Dated: March 4, 2020

Andrew T. Thomasson, Attorney-in-Charge
   NJ Bar No. 048362011; SDTX No. 2347873
Philip D. Stern
   NJ Bar No. 045921984; SDTX No. 3063738
Francis R. Greene
   IL Bar No. 6272313; SDTX No. 2580087
Katelyn B. Busby
   AR Bar No. 2014133; SDTX No. 3466595
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 379-7500
E-Mail: andrew@sternthomasson.com
E-Mail: philip@sternthomasson.com
E-Mail: francis@sternthomasson.com
E-Mail: katelyn@sternthomasson.com

Joseph A. George
   TX Bar No. 24082319; SDTX No. 3158394
THE LAW OFFICE OF JOSEPH A. GEORGE, PLLC
P.O. Box 147
Olmito, TX 78575
Telephone: (210) 410-3689
E-Mail: joseph@josephageorge.com

_Attorneys for Jesus Trevino_