**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| JESUS TREVINO, individually and on behalf of those similarly situated, | § § § § § | |
| Plaintiff, | § § | |
| *vs.* | § § | Civil Action No. 7:20-cv-00059 |
| SCOTT & ASSOCIATES, P.C., a Texas Professional Corporation; and JOHN and JANE DOES 1-10, | § § § § | |
| Defendants. | § § § | |

**PLAINTIFF'S OPPOSED MOTION FOR CLASS CERTIFICATION**

Plaintiff, Jesus Trevino, respectfully submits this Motion for entry of an Order certifying this lawsuit to proceed as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) against Defendant, Scott & Associates, P.C. ("SCOTT").

## I.   RELEVANT PROCEDURAL HISTORY AND FACTS

*A.   Procedural History.*

Plaintiff, Jesus Trevino, filed this class action lawsuit on March 4, 2020. [Doc. 1.] He alleges SCOTT violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*. and Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392, *et seq.*, by mailing deceptive and misleading collection letters to Plaintiff and other similarly situated Texas residents.

SCOTT was personally served with process and filed its Answer on April 7, 2020. [Doc. 6]. The Parties, through counsel, met and conferred pursuant to Fed. R. Civ. P. 26(f) and, on May 4, 2020, they filed their Joint Discovery/Case Management Plan. [Doc. 10.]

The Court subsequently reviewed the Joint Discovery/Case Management Plan and entered a Scheduling order governing certain case deadlines. [Doc. 12.]

On May 15, 2020, Plaintiff served SCOTT with initial sets of Interrogatories, Requests for Production of Documents, and Requests for Admission. [*Thomasson Decl.*, ¶10.] On June 15, 2020, SCOTT served its responses to Plaintiff's discovery requests. [*Id.* at ¶11 (Exh. 1).]

B.       *Nature of the Case and Facts Relevant to Class Certification.*

SCOTT mailed Plaintiff a collection letter ("Letter") dated March 14, 2019, which sought to collect a defaulted debt ("Debt") owed to Capital One Bank (USA), N.A. ("Capital One"). [Doc. 1, Exh. A; Doc. 6, ¶¶22, 24.] The Letter is a template letter SCOTT uses to collect debts from Texas residents. [*Thomasson Decl.,* ¶11 (Exh. 1 at Request for Admission Nos. 10-14).]

The Letter falsely stated SCOTT was offering a "**SPECIAL TAX TIME AUTHORITY ON YOUR ACCOUNT**" and listed three settlement "options" encouraging Plaintiff to make a lump sum payment, or make a down payment and subsequent installment payments. (Emphasis in original) [Doc. 1, Exh. A; Doc. 6, ¶27.] The Letter then stated "PLEASE DO NOT IGNORE THIS MATTER! This offer is good for 45 days." In whole, SCOTT's Letter offered a false, deceptive, and misleading one-time take-it-or-leave-it settlement offer:

> TAX TIME SETTLEMENT OFFER
>
> Dear Trevino Jesus [sic],
>
> *Are you expecting a tax refund?* We are offering **SPECIAL TAX TIME AUTHORITY ON YOUR ACCOUNT**; but for a limited time only!
>
> . . .
>
> PLEASE DO NOT IGNORE THIS MATTER! This offer is good for 45 days.

[*Id.*] (emphasis in original.) At the bottom of the Letter, following SCOTT's signature, the Letter contains the following false statement: "*Please consult your financial advisor, as forgiveness of debt may require the filing of a 1099C."* [*Id.*] (emphasis in original.)

SCOTT was always authorized to accept the Letter's settlement offer beyond the stated

45 day deadline and, further, would have settled the Debt after the 45 day deadline for less than the stated offer. [Doc. 1, ¶¶28-30.] Additionally, SCOTT's warning to "*[p]lease consult your financial advisor, as forgiveness of debt may require the filing of a 1099C*" was false, deceptive, and misleading because it warns of an impossible outcome—namely, that Capital One may file an IRS Form 1099C if the settlement was accepted when, in fact, Capital One will *never* file IRS Form 1099C when, as here, the "stated principal" portion of the amount of debt forgiven by a settlement is less than $600. [*Id.* at ¶¶40-54.]

SCOTT's Letter was, therefore, materially false, deceptive, and misleading to the unsophisticated consumer as a person with limited financial resources would, based on the Letter, choose to pay the debt over an otherwise identical debt in which the collection letter did not (a) falsely state the settlement offer was a one-time take-it-or-leave-it-offer or (b) warn of non-existent IRS reporting and advise consumers to consult with a "financial advisor."

Plaintiff contends SCOTT's standardized template Letter uniformly violates the FDCPA and TDCA—specifically, 15 U.S.C. § 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f, as well as Tex. Fin. Code § 392.304(a)(19). Plaintiff seeks certification of a class defined as ("Class"):

> All natural persons to whom Scott & Associates, P.C. mailed a written communication in the form of ***Exhibit A*** to the Complaint to an address in the State of Texas between March 4, 2019 and March 25, 2020.

In discovery, SCOTT revealed there are 518 persons who meet the Class definition. [*Thomasson Decl.,* ¶11 (Exh. 1 at Response to Interrogatory Nos. 4 and 12).]

## II.  THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 388 (5th Cir. 2002). The Act has a broad remedial purpose which prohibits far more

than merely sending letters to consumers who do not actually have any debt. *See Obduskey v. McCarthy & Holthus, LLP*, 139 S. Ct. 1029, 1041, 203 L. Ed. 2d 390 (2019) (Sotomayor, J., concurring) (describing the "broad, consumer-protective purposes" of the FDCPA); *see also Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016) (explaining that because "Congress clearly intended the FDCPA to have a broad remedial scope," it "should therefore be construed broadly and in favor of the consumer." ); and *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992).

The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with collection of a debt. 15 U.S.C. §§ 1692d, 1692e, and 1692f. Thus, when enacting the FDCPA, Congress recognized the:

> universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

To fulfill the FDCPA's remedial purpose, Courts in the Fifth Circuit generally hold that whether a debt collector's conduct violates the FDCPA should be judged from the perspective of the "unsophisticated or least sophisticated consumer." *Daugherty*, 836 F.3d at 511 quoting *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012). The Fifth Circuit generally refers to the "unsophisticated consumer" and "least sophisticated consumer" standards interchangeably as "unsophisticated consumers." *Id*. at 511 n.2. (citing *Peter v. G.C. Servs. L.P.*, 310 F.3d 344, 349 n.1 (5th Cir. 2002) (electing not to distinguish between the two because "the difference between the standards is *de minimis* at most.") These standards ensure the FDCPA

protects all consumers, the "gullible as well as the shrewd." *Id. (quoting Goswami v. Am. Collections Enter.*, 377 F.3d 488, 495 (5th Cir. 2004). Both standards are objective—thus, whether Plaintiff or any class member was misled is ***not*** an element.

"Congress also intended the FDCPA to be self-enforcing by private attorney generals in actions such as the case at bar." *Cash v. Allied Interstate*, No. H-04-0932, 2005 U.S. Dist. LEXIS 59617, at *15-16 (S.D. Tex. Mar. 29, 2005) citing *See* S. Rep. No. 95-382, at 5 (describing FDCPA as "self-enforcing") and *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("[FDCPA) mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.") Class actions are, as explained in *Cash*, necessary to fulfill the FDCPA's remedial purposes:

> Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action. Accordingly, the Court finds that Rule 23(b)(3) is satisfied.

*Id.* at *15-16. Thus, a consumer need not prove intent, bad faith, or negligence in an FDCPA case because the "FDCPA is a strict liability statute," *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990), and "[a] single violation of any provision of the Act is sufficient to establish civil liability". *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

Statutory damages are recoverable for FDCPA violations irrespective of whether a consumer proves actual damages. *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 726 n.9 (S.D. Tex. 2011) citing *Rogers v. B-Real, L.L.C.*, 391 B.R. 317 (Bankr. M.D. La. 2008) and *Keele v. Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998).

The TDCA provides a state law remedy for wrongful debt collection actions including a collector's general use of false representations or deceptive means to collect a debt. Tex. Fin.

Code. § 392.304(a)(19). Given the similarities between the FDCPA and TDCA, the discussion above of the FDCPA equally applies to TDCA violations.

### III. STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. The United Supreme Court has noted that class actions allow for the aggregation of small claims held by many consumers. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."); *accord. Hordge v. First Nat'l Collection Bureau, Inc*., No. 4:15-CV-1695, 2018 U.S. Dist. LEXIS 218823, at *16 (S.D. Tex. July 5, 2018).

Thus, denial of class certification would lead to situations where consumers holding a small claim are unlikely to pursue relief given the costs involved, to the benefit of unscrupulous businesses which, in violating the law, obtain a significant financial benefit from their illegal actions without fear of meaningful litigation.

To thwart serial violations by debt collectors, Congress expressly recognized the propriety of class actions under the FDCPA, by providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and 1692k(b) class action cases. *Cash v. Allied Interstate*, 2005 U.S. Dist. LEXIS 59617, at *15-16. As a result, numerous FDCPA class actions have been certified in the Fifth Circuit. *See, e.g.*, *Walton v. Franklin Collection Agency, Inc.,* 190 F.R.D. 404, 413 (N.D. Miss. 2000); *Castro v. Collecto, Inc.*, 256 F.R.D. 534 (W.D. Tex. 2009); *Barnett v. Experian Info. Sols.*, No. CIV.A. 2:00CV175, 2004 WL 4032909, at *2-5 (E.D. Tex. Sept. 30, 2004); *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337, 338 (S.D. Miss. 2015);

*Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, No. CIV.A. 12-2043, 2014 WL 7330602, at *1 (E.D. La. Dec. 18, 2014); and *Cope v. Duggins*, 98-3599-L, 2000 U.S. Dist. LEXIS 5081 (E.D. La. Apr. 14, 2000).

Mr. Trevino's counsel have certified dozens of FDCPA class action cases throughout the United States including Texas. [*Thomasson Decl.,* ¶¶ 3-8.]

## IV. THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23

### A. *Rule 23(a)(1) – Numerosity.*

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The Fifth Circuit's analysis of numerosity is, as Rule 23(a)(1) provides, focused on the impracticability of joining would-be class members as plaintiffs in one action. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The analysis starts with a "reasonable estimate of the number of purported class members" but "the actual number of class members" is not alone dispositive because the issue is "whether joinder of all members is practicable." The Fifth Circuit has recognized that forty class members can raise a presumption of impracticability. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *See* 1 Newberg on Class Actions § 3.05, at 3–25 (3d ed.1992)).

Here, SCOTT admits there are 518 persons who meet the Class definition. [*Thomasson Decl.*, ¶11 (Exh. 1 at Interrogatory Nos. 4 and 12; and Request for Admission No. 16).] Accordingly, the numerosity requirement is satisfied.

### B. *Rule 23(a)(2) Commonality.*

Satisfaction of the commonality requirement under Rule 23(a)(2) requires that plaintiffs demonstrate their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011). The requirement is satisfied if there is at least

one issue of law or fact that will affect all or a significant number of the putative class members. *Mullen*, 186 F.3d at 625; *Forbush v. J.C. Penney Co. Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993); *Johnson v. U.S.*, 208 F.R.D. 148, 167-68 (W.D. Tex. 2001).

A common policy or course of conduct is especially amenable to class-wide adjudication. *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 172 (5th Cir. 2015) ("Because there is a common course of conduct that provides a class-wide basis for deciding significant common issues of fact and law…the district court correctly concluded that common issues predominate."); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 442-443 (W.D. Tex. 1999) ("As long as class members are allegedly affected by a defendant's general policy, and the general policy is the crux or focus of the litigation, the commonality prerequisite is satisfied.")

Thus, in the context of FDCPA litigation, common questions arise in cases like Mr. Trevino's "where…defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted); *see also, Suchanek v. Sturm Foods,* 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). In *Hordge v. First Nat'l Collection Bureau, Inc.*, the court found that the class member's receipt of form collection letters satisfied commonality. 2018 U.S. Dist. LEXIS 218823 *4-5.

Here, Class members share both questions of fact and law. The common question of fact is whether SCOTT mailed each Class member the same *standardized* template collection Letter. The common questions of law are whether the content of SCOTT's Letter is violates the FDCPA and TDCA by using false, deceptive, and misleading representations and/or means to collect or attempt to collect any debt or to obtain information concerning a consumer (*See,* 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), and 1692f, and Tex, § 392.304(a)(19)).

Therefore, common questions of both law and fact exist among the individual Class members which satisfy the commonality requirement of Rule 23(a)(2).

C.     *Rule 23(a)(3) – Typicality.*

The claims of the class representative must be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The test for typicality, like commonality, is not demanding. *Forbush*, 994 F.2d at 1106. Typicality "is commonality addressed from the perspective of the named plaintiffs. A named plaintiff's claims are typical of the class if they "arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory." *Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D. Tex. 1993) (class action arising from standardized financing documents, named plaintiffs' claims were typical of those of putative class members); *see also, Cole v. Livingston*, 2016 WL 3258345, at *8 (S.D. Tex. 2016) (citations omitted).

Here, typicality is inherent in Plaintiff's proposed Class definition. By definition, SCOTT mailed Plaintiff and each Class member the same *standardized* template collection Letter which violated the FDCPA and TDCA in the same manner (*i.e.*, by making false, deceptive, and misleading limited time settlement offers and untrue warnings that acceptance of the settlement may require Capital One to "file IRS Form 1099C") entitling each Class member to damages.

Thus, typicality is satisfied.

D.     *Rule 23(a)(4) – Adequacy of Representation.*

Fed. R. Civ. P. 23(a)(4) requires that a named plaintiff provide fair and adequate protection for the interests of the class. Adequacy "encompasses three separate but related inquiries (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir.

2017) (citations omitted). All of these requirements are met here.

All three considerations are satisfied here. Plaintiff has retained counsel who have the requisite resources, commitment, and experience litigating class actions and complex consumer claims and they do not have conflicting interests with Class members. [*Thomasson Decl.*, ¶¶ 2-8; *George Decl.*, ¶¶2-6.] Likewise, Mr. Trevino has been actively involved in the case, he is willing and able to protect Class members' interests, and he does not have any interests conflicting with Class members. [*Thomasson Decl.*, ¶12; *George Decl.*, ¶5.] Moreover, Mr. Trevino and Class members have all suffered the same legal injury and seek the same relief for that injury under the FDCPA and TDCA. Given the identity of claims between the Plaintiff and Class members, there is neither the potential for conflicting interests in this action nor any antagonism between the interests of Plaintiff and Class members.

### E.     Rule 23(b)(3) – Superiority and Predominance.

A class action may be maintained only if the requirements of Rule 23(a) are satisfied, and the court finds that the "questions of law or fact common to the class ***predominate*** over any questions affecting only individual members, and … a class action is ***superior*** to any other available method for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). Class actions are especially appropriate for resolving FDCPA claims. *See, e.g., Cash v. Allied Interstate*, 2005 U.S. Dist. LEXIS 59617, at *15-16 (certifying class action for FDCPA violations involving collection letters ("Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA" because without it "meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action")); *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004) ("Class actions may be well-suited to the FDCPA, where an individual claimant's damages are capped at $1,000); *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir.

2005) (recognizing superiority of class action in FDCPA debt collection letter context).

First, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1191 (2013) (emphasis in original). Individual questions need not be absent, so long as common questions predominate. *Id*. at 1196. Here, this common question predominates because by definition, the proposed Class is comprised only of Texas residents to whom SCOTT mailed its same *standardized* template Letter which allegedly violates the FDCPA and TDCPA in the same manner. In other words, there is no indication that these causes of action requires "individual treatment" of claims. Therefore, the predominance inquiry of Rule 23(b)(3) is satisfied.

Second, to establish superiority, a plaintiff must demonstrate that resolution by class action will "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results." *Windsor*, 521 U.S. at 615. The Fifth Circuit has held the superiority requirement requires an assessment of "the relative advantages of alternative procedures for handling the total controversy." *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note to 1966 Amendment).

To that end, courts routinely find class actions are a superior method when each class members' damages are modest because as the Supreme Court teaches:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Windsor*, 521 U.S. at 617 (1997) (quoting *Mace*, 109 F.3d at 344); *see also, Cash v. Allied Interstate*, 2005 U.S. Dist. LEXIS 59617, at *15-16; and *Walton*, 190 F.R.D. at 412–13 (N.D.

Miss. 2000) (some citations omitted) ([T]he Fifth Circuit has held that the 'most compelling rationale for finding superiority in a class action' is the existence of a 'negative value suit.' *Castano v. American Tobacco Co.,* 84 F.3d 734, 748 (5th Cir.1996). A negative value suit is one in which the 'stakes to each member are too slight to repay the cost of the suit.' *In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1300 (7th Cir.1995).

The damages caused by a violation the FDCPA are typically modest. *Barnett*, 2004 WL 4032909, at *5 ("[T]he typical recovery in an FDCPA case by an individual is often very small due to the plaintiff's inability to demonstrate precisely the amount of reasonable compensation necessary to remedy an unfair collection practice. The absence of the class action vehicle would leave many consumers with no practical alternative to enforce their rights under the statute.") Thus, a class action is a superior method of adjudicating an FDCPA claim when class members are likely unaware their rights were violated. *Hordge*, 2018 U.S. Dist. LEXIS 218823, at *16-17 citing *Purdie v. Ace Cash Express, Inc.*, No. CIV.A. 301CV1754L, 2003 WL 22976611, at *4 (N.D. Tex. Dec. 11, 2003) (noting many of the affected borrowers may be unaware of a violation of "their rights and that any individual claim that they may have would be for relatively small amounts of money" and granting class certification in an FDCPA suit); *accord. Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 573 (S.D. Tex. 2000).

Here, given the very specific common thread (*i.e*., SCOTT's standardized Letter) tying Class members' claims together, the judicial economy of class adjudication is plainly superior to 518 individual cases littering the dockets of Texas court that challenge the same, standardized, conduct. Moreover, most Class Members are likely unaware of their statutory rights, or that a violation of those rights or unlikely to be able to find an attorney willing to take the case, as an individual case would be economically unfeasible. *Mace*, 109 F.3d at 344-345.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant his Motion for Class Certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

Respectfully submitted,

*s/ Andrew T. Thomasson*

Dated: July 22, 2020

Andrew T. Thomasson, Attorney-in-Charge
   NJ Bar No. 048362011; SDTX No. 2347873
Philip D. Stern
   NJ Bar No. 045921984; SDTX No. 3063738
Francis R. Greene
   IL Bar No. 6272313; SDTX No. 2580087
Katelyn B. Busby
   AR Bar No. 2014133; SDTX No. 3466595
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 665-2056
E-Mail: Andrew@SternThomasson.com
E-Mail: Philip@ SternThomasson.com
E-Mail: Francis@ SternThomasson.com
E-Mail: Katelyn@ SternThomasson.com

Joseph A. George
   TX Bar No. 24082319; SDTX No. 3158394
THE LAW OFFICE OF JOSEPH A. GEORGE, PLLC
P.O. Box 147
Olmito, TX 78575
Telephone: (210) 410-3689
E-Mail: joseph@josephageorge.com

*Attorneys for Plaintiff, Jesus Trevino*

### CERTIFICATE OF CONFERENCE

I hereby certify that, in accordance with Local Rule 7.1(D), Plaintiff's counsel have complied with the meet-and-confer requirement contained therein and that Plaintiff's Motion for Class Certification is opposed. I certify that, on July 1, 2020, the Parties' counsel conferred by email and telephone regarding Defendant's position on Plaintiff's Motion for Class Certification; however, counsel could not agree about the disposition of the Motion and Defendant's counsel confirmed they intend to oppose it.

*s/ Andrew T. Thomasson*
Andrew T. Thomasson

## CERTIFICATE OF SERVICE

      I, Andrew T. Thomasson, hereby affirm under the penalties of perjury that on July 22, 2020, I served the within documents and all supporting papers on the Clerk of this Court using this Court's CM/ECF system. I also certify that the forgoing documents are being served this day on all counsel of record and Parties to this action in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who have not yet appeared or are otherwise not authorized to receive electronic Notices of Electronic Filing.

                                                *s/ Andrew T. Thomasson*
                                                Andrew T. Thomasson